IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| VERIDIANHEALTH, LLC, et al., | ) | |
| | ) | Case No. 05 B 31483 |
| | ) | |
| Debtors. | ) | The Honorable Carol A. Doyle |

### AGREED FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL

At Chicago, in said District, this 15th day of November, 2005.

**THIS CAUSE** coming on to be heard upon the Motion of Norman B. Newman, duly appointed Chapter 11 trustee (**"Trustee"**) for VeridianHealth, LLC (**"Veridian"**), Universal Enterprises Midwest, LLC (**"Universal Midwest"**), Factor, LLC (**"Factor"**) and MISU Midwest, LLC (**"MISU Midwest"**), the debtors in the above-captioned Chapter 11 cases (collectively, the **"Debtors"**), and JPMorgan Chase Bank, N. A. (**"Bank"**) for the entry of an order authorizing the use of cash collateral pursuant to Section 363 of the United States Bankruptcy Code (the **"Code"**) and to provide adequate protection therefor (the **"Motion"**); due and proper notice of the Motion, the "Interim Order", as defined below, and the proposed entry of this final order (the **"Final Order"**) having been given to each of the Debtors, the Debtors' secured creditors, the office of the United States Trustee, the twenty largest unsecured creditors of the estates and other parties in interest, as evidenced by that certain Certificate of Service filed herein dated October 28, 2005; the Trustee and the Bank having agreed to the entry hereof; and the Court having reviewed the Motion and this Final Order, having considered the statements of

counsel present, and being otherwise fully advised in the premises; and based upon the STIPULATIONS and REPRESENTATIONS of the parties finds as follows:

A. On August 10, 2005 (the **"Petition Date"**), involuntary petitions under Chapter 11 of the Code were filed against each of the Debtors. Pursuant to the motion of the Bank, one of the involuntary petitioning creditors herein, by orders of this Court dated August 24, 2005, orders for relief under Chapter 11 of the Code were entered against each of the Debtors, the appointment of a Chapter 11 trustee for each Debtor was ordered, and the cases were procedurally consolidated so that they could be jointly administered (collectively, the **"Bankruptcy Cases"**).

B. The Trustee, Norman B. Newman, is the duly appointed and acting Trustee for each of the Debtors by order of this Court dated August 31, 2005.

C. On October 26, 2005, the Court conducted an initial hearing on the Motion and entered an Agreed Interim Order Authorizing Use of Cash Collateral (**"Interim Order"**) under which, *inter alia,* the Motion was set for final hearing for the purpose of considering further use of Cash Collateral on November 15, 2005 (**"Final Hearing"**). Pursuant to the Interim Order, the Trustee and/or the Bank was required to serve by personal delivery, overnight mail or facsimile, by no later than October 28, 2005, true copies of the proposed Final Order and notice of the Final Hearing to the Debtors' twenty largest unsecured creditors, all secured creditors, the United States Trustee, and counsel for any Committee appointed herein. Such notice was deemed to constitute due and adequate notice of the Final Hearing on all parties. Counsel to the Bank has made such necessary service and filed a Certificate of Service herein to that effect.

D. The Debtors are Illinois limited liability companies which were engaged in the business of healthcare services, and together with certain other affiliated entities, each made

assignments for the benefit of their creditors under Illinois law on June 13, 2005 to Michael J. Eber (the "**Assignee**" or collectively, the "**Assignments**"). As more fully described below, during the Assignments, the Bank extended certain financial accommodations to the Assignee in connection with the performance of his duties.

   E. Pursuant to Section 543 of the Code, upon the Petition Date, the Assignee became a custodian of the Debtors' assets, and subsequently has turned over substantially all such assets to the Trustee, including approximately $400,000 of the Bank's "Cash Collateral", as defined below.

   F. The Trustee intends to conduct an orderly liquidation of the Debtors' assets and distribute the proceeds thereof in accordance with the priorities established by law.

   G. As of the Petition Date, the Debtors were indebted to the Bank in the principal amount of approximately $8 million dollars, which, together with all accrued and unpaid interest thereon and any other amounts owing to the Bank by the Debtors or the Assignee under the applicable loan documents, is hereinafter collectively referred to as the "**Prepetition Bank Indebtedness**". The Prepetition Bank Indebtedness arises from loans, advances and other financial accommodations made to or for the benefit of the Debtors, their "Affiliates", as defined below, and/or their predecessors, and the Assignee, pursuant to, *inter alia*, the documents identified below, which, together with all other documents, instruments and agreements heretofore, now or hereafter executed and delivered by the Debtors or any of their predecessors or the Assignee in favor of the Bank shall be collectively referred to as the "**Bank Loan Documents**":

(i) Line of Credit Note in the principal amount of $10,000,000 dated January 1, 2005, made, executed and delivered by Veridian, Factor and Universal Midwest to the Bank;

(ii) Note Modification Agreement dated March 14, 2005 made, executed and delivered by Veridian, Factor and Universal Midwest to the Bank;

(iii) Term Note in the principal amount of $3,000,000 dated March 14, 2005 made, executed and delivered by Veridian, Factor and Universal Midwest to the Bank;

(iv) Irrevocable Standby Letter of Credit No. 440729 dated March 10, 2005 issued by the Bank on behalf of Veridian, as applicant, in favor of MJH Deerfield, LLC;

(v) Credit Agreement dated January 1, 2005 made, executed and delivered by Veridian, Factor and Universal Midwest to the Bank;

(vi) Amendment to Credit Agreement dated March 14, 2005 made, executed and delivered by Veridian, Factor and Universal Midwest to the Bank;

(vii) Line of Credit Note in the principal amount of $5,000,000 dated March 12, 2004 made, executed and delivered by ZT Technical Services Sub, LLC (**"ZT"**); HTZ Technical Services, Inc. (**"HTZ"**), and Factor to the Bank;

(viii) Note Modification Agreement dated July 1, 2004 made, executed and delivered by ZT, HTZ and Factor to the Bank;

(ix) Credit Agreement dated March 12, 2004 made, executed and delivered by ZT, HTZ and Factor to the Bank;

(x) Amendment to Credit Agreement dated July 1, 2004 made, executed and delivered by ZT, HTZ and Factor to the Bank;

(xi) Continuing Security Agreement dated January 1, 2005 made, executed and delivered by Veridian to the Bank;

(xii) Continuing Security Agreements dated January 1, 2005 and March 12, 2004 made, executed and delivered by Factor to the Bank;

(xiii) Continuing Security Agreement dated January 1, 2005 made, executed and delivered by Universal Midwest to the Bank;

(xiv) Continuing Guaranty dated January 1, 2005 made, executed and delivered by MISU Midwest to the Bank;

(xv) Secured Line of Credit Note dated June 13, 2005 made, executed and delivered by the Assignee to the Bank; and

(xvi) Commercial Security Agreement dated June 13, 2005 made, executed and delivered by the Assignee to the Bank.

H. As collateral security for the Prepetition Bank Indebtedness, the Debtors and the Assignee granted to the Bank, pursuant to the Bank Loan Documents, liens and security interests in and to, *inter alia*, all of the property of the Debtors and the Assignee, as the case may be, as described below, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, (collectively, the **"Prepetition Bank Liens"** or **"Prepetition Bank**

c:\My Documents

**Collateral")**[1]: (i) all Accounts; (ii) all Inventory; (iii) all Equipment; (iv) all Deposit Accounts; (v) all General Intangibles; (vi) all Commercial Tort Claims (in Assignee's loan documents only); (vii) all Letter of Credit Rights; (viii) all Documents; (ix) all Instruments; (x) all Chattel Paper; (xi) all Investment Property; (xii) all books, records, data and software relating to any of the foregoing; (xiii) all Proceeds, Products and Supporting Obligations relating to any of the foregoing; and (xiv) any and all collateral granted as security by the Debtors' **"Affiliates"**[2] any and all other entities relating to the Bank Loan Documents.

I. Since his appointment, the Trustee has had an opportunity to review and analyze the Bank Loan Documents and the Prepetition Bank Liens, and based on such examination, the Trustee believes that the Prepetition Bank Indebtedness is secured by valid and perfected liens and security interests in and to the Prepetition Bank Collateral and all products and proceeds thereof. The Trustee understands and believes the Prepetition Bank Indebtedness is further secured by blanket liens granted in favor of the Bank by the Debtors' Affiliates.

J. The Trustee is unable to obtain sufficient unsecured credit (allowable as an administrative expense under Section 503(b)(1) of the Code) to conduct his duties and responsibilities under the Code.

K. An immediate need exists for the Trustee to use certain of the proceeds of the Prepetition Bank Collateral comprising the Bank's **"Cash Collateral"** as defined in Section 363(a) of the Code, in order to continue his duties and responsibilities herein, and prevent immediate and

---

[1] All defined terms used herein shall have the same meaning as defined in the Uniform Commercial Code of the State of Illinois as in effect from time to time.

[2] The "Affiliates" are: ZT; HTZ; First Diagnostics, LLC; FirsTherapy, LLC; American Medical Consulting, LLC; Affiliated Diagnostic Associates, LLC; and Diagnostics Unlimited, LLC.

69485.1 11/14/05                                                        5

irreparable harm to the Debtors' estates. Without such funds, the Trustee will not be able to pay for fees, costs and other expenses essential to the ongoing performance of his duties and further identified and set forth on the "Budget," as hereinafter defined.

L. The Trustee contends that good cause exists for the entry of the Final Order. Among other things, entry of the Final Order will: (i) minimize disputes and potential contested litigation over use of cash collateral; (ii) avoid disruption of the Trustee's efforts; and (iii) aid in promoting the orderly administration of the Bankruptcy Cases.

M. On October 19, 2005, counsel to the Bank served notice of the instant Motion upon the United States Trustee, the Trustee, the involuntary petitioning creditors, the twenty largest unsecured creditors of the Debtors and additional parties in interest, as set forth in the Certificate of Service filed with the Court. Such notice constitutes adequate and sufficient notice under Rule 4001 of the Federal Rules of Bankruptcy Procedure and no other notice was necessary with respect to the interim relief requested therein.

N. This matter is a "core" proceeding as defined in 28 U.S.C. §157(b)(2).

**NOW THEREFORE BASED UPON THE FOREGOING FINDINGS, IT IS HEREBY ORDERED as follows:**

1. The above-described findings be and are incorporated herein as if fully set forth.

2. The Trustee is hereby authorized to use the Cash Collateral upon the following terms and conditions:

    a. The Trustee may use the Cash Collateral under the provisions of this Final Order to and including January 31, 2006 (the **"Final Period"**), in an amount not to exceed $230,000, inclusive of the amounts authorized in the Interim

Order, for those types of expenditures specified in the Budget attached as Exhibit A hereto and made a part hereof (the "**Budget**") (collectively, the "**Final Authorized Amount**"), subject to the limitations set forth in subparagraph (b) below;

b. The Trustee is authorized to make payments from the funds in the "Trustee Accounts" as hereinafter defined, for those types of ordinary and customary expenditures set forth on the Budget for which the Trustee shall first have either obtained the written consent of the Bank in advance of any such expenditure which consent shall be given in the Bank's reasonable discretion, or have obtained Court authority for such expenditure on prior written notice to the Bank ("**Authorized Expenditures**"). In the absence of the consent of the Bank to any such expenditure, the Trustee shall not pay such expenditure unless the Court, after notice and a hearing, authorizes the Trustee to pay such expenditure;

c. All Authorized Expenditures shall be deemed carve-outs and not subject to disgorgement upon allowance by court order or consented to by the Bank;

d. Except as expressly authorized herein, the Trustee shall not use, sell or otherwise dispose of any of the Prepetition Bank Collateral, without further order of this Court; and

e. The Trustee's right to use Cash Collateral pursuant to this Order is without prejudice to the Trustee's right to seek extension or modification of this Order, and the Bank's right to contest same.

69485.1 11/14/05

7

3.  As adequate protection for the use of the Cash Collateral and to protect against diminution in the value of the Prepetition Bank Collateral, the Trustee be and it hereby is authorized and directed and does hereby grant to the Bank as of the Petition Date, without further act, notice, or deed, a postpetition security interest in and to the same assets and properties of the Debtors (the **"Postpetition Bank Collateral"**) as the Debtor and the Assignee previously granted to the Bank in the Prepetition Bank Collateral under the Bank Loan Documents, and including actions assertable by the Trustee under Sections 544, 547, 548, 549 and 550 of the Code (the **"Replacement Liens"**). The Replacement Liens in the Postpetition Collateral shall be to the same extent, and shall have the same validity, priority and enforceability as the security interests of the Bank in the Prepetition Bank Collateral (the Prepetition Bank Collateral and the Postpetition Bank Collateral shall be sometimes hereafter collectively referred to as the **"Collateral"**).

4.  The Replacement Liens shall be deemed valid and perfected without the execution of documentation or the filing of financing statements, as of the Petition Date, without regard to applicable state, federal or local filing and recording statutes which may affect the perfection of liens and security interests. The Replacement Liens shall remain in full force and effect notwithstanding the conversion or dismissal of any or all of the Bankruptcy Cases. The Bank, may, but shall not be required to take any action to perfect its security interests and liens continued, confirmed or granted under this Final Order. The Trustee shall cooperate in the execution of any UCC-1 financing statements and any other documentation which the Bank reasonably requires to evidence the liens and security interests granted herein. The automatic stay pursuant to Section 362 of the Code is hereby modified to the extent necessary to permit the Bank to file and/or record any financing

c:\My Documents

statements, deeds of trust, mortgages or other instruments and documents, if any, evidencing its liens and security interests in and to the Postpetition Bank Collateral.

5. If and to the extent the adequate protection of the interests of the Bank in the Collateral granted pursuant to the Interim Order and/or this Final Order proves insufficient, the Bank shall have an allowed claim under Section 507(b) of the Code, in the amount of any such insufficiency, which shall have priority over any and all administrative expenses of the Debtors' estates of the kind specified in Sections 503(b), 506(c), 507(a) or 552(b) of the Code, excluding only an amount equal to any fees payable by the Trustee to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6).

6. The Trustee shall open and maintain at the Bank one or more trustee account(s) and, with the exception of funds needed for petty cash allowed by this Court, the Trustee shall deposit and maintain all Cash Collateral in such trustee account(s) (the "**Trustee Accounts**"). Any Cash Collateral in the Trustee Accounts, in excess of the aggregate sum of $200,000 at any time shall be paid by the Trustee to, and applied by, the Bank in partial satisfaction of the Bank Indebtedness, no less frequently than the 1st and the 15th day of each month during the Final Period. Upon the expiration of the Final Period or such extensions thereof, the Trustee shall promptly remit all Cash Collateral in the Trustee Accounts to the Bank (except for the unused funds in the Trustee's Account necessary to pay an item designated in the Budget) for application by the Bank to the outstanding Bank Indebtedness in such manner as the Bank in its sole and absolute discretion sees fit.

7. Upon reasonable prior written notice by the Bank, which the parties agree shall be not less than forty eight (48) hours, the Bank through its authorized agents and representatives shall

c:\My Documents

be granted access to the Debtors' books and records for purposes of inspection, review, audit, appraisal, evaluation and/or copying.

8. Unless otherwise provided in this Final Order, the relief granted herein shall be without prejudice to the right of the Bank at any time hereafter to seek termination of the automatic stay, or to seek any other relief available to the Bank under the Code. The Trustee reserves the right to object to any such relief sought by the Bank.

9. Nothing contained in this Final Order shall require or shall be deemed to require the Bank to make any additional loans to the Trustee, or extend any other financing or financial accommodations to or for the benefit of the Trustee, except as expressly set forth in this Final Order or the Bank Loan Documents. Notwithstanding anything to the contrary contained herein, the entry of this Order shall be without prejudice to the Trustee's right to seek an extension of this Order to use Cash Collateral, and the Bank's right to contest same.

10. As and when the Trustee submits monthly operating reports and any other reports required pursuant to the United States Trustee's requirements, the Trustee shall provide copies thereof to the Bank and its counsel. The Trustee shall also promptly furnish the Bank with all other financial reports generated in the performance of his duties.

11. The provisions of this Final Order shall be binding upon and inure to the benefit of the Bank and the Trustee, and their respective successors and assigns.

12. If any or all of the provisions of this Final Order are hereafter modified or vacated by subsequent order of this Court or any other court, then, notwithstanding such modification or vacation, any extension of credit, including the use of the Cash Collateral, made pursuant to this

c:\My Documents

Final Order by the Bank, prior to such modification or vacation, to or for the benefit of the Trustee, shall be governed in all respects by the original provisions of this Final Order.

13. The Trustee shall be deemed to have defaulted under the terms of this Final Order if, following the entry of this Final Order without the prior written consent of the Bank, he fails to comply any provision of this Final Order, including, but not limited to, expenditures of Cash Collateral in excess of the Final Authorized Amount, or expenditures for items which are not Authorized Expenditures (collectively referred to as **"Event of Default"**). Notwithstanding the foregoing, the parties hereto agree that any Event of Default which arose prior to the Petition Date shall not be deemed an Event of Default hereunder.

14. The Bank shall provide the Trustee with written notice of any Event of Default within its actual knowledge under this Final Order. If the Trustee fails to cure an Event of Default to the reasonable satisfaction of the Bank within five days following receipt of written notice of such default, then the authorization to use Cash Collateral pursuant to this Final Order shall immediately be terminated, without prejudice to the Trustee's right to seek further use of Cash Collateral.

15. The failure by the Bank to provide the Trustee with written notice of an Event of Default under the terms of this Final Order shall not be construed as a waiver by either party of the right to assert any such default at a later date.

16. Excluding only the Trustee who has already reviewed and analyzed the Bank Loan Documents and the Prepetition Bank Liens, and determined that the Prepetition Bank Indebtedness is secured by valid and perfected liens and security interests in and to the Prepetition Bank Collateral and all products and proceeds thereof, no provision of this Final Order shall prejudice the rights of any Committee appointed, any subsequent trustee, claimant, interest holder or other party in interest in the Bankruptcy Cases (collectively, the **"Interested Parties"**), to contest or object to the validity,

perfection, priority or enforceability of any liens, security interests or encumbrances asserted by the Bank in the Collateral, provided, however, that Interested Parties must assert by applicable pleading an objection to the validity, perfection, priority or enforceability of any liens, security interests or encumbrances of the Bank in the Collateral by no later than thirty (30) days from the date of the entry of the Interim Order.

17. Any notice to be given or other written matter to be delivered pursuant to this Final Order shall be deemed received either upon personal delivery thereof to the respective recipient's counsel at the addresses listed below, or three (3) business days after placing such notice or written matter in the U.S. Mail, postage prepaid, properly addressed to the addresses stated below:

> If to the Trustee: Norman B. Newman, Esq.
> Scott N. Schreiber, Esq.
> Much Shelist Freed Denenberg Ament & Rubenstein, P.C.
> 191 N. Wacker Drive, Suite 1800
> Chicago, IL 60606
> (Fax) 312-521-2385
>
> If to the Bank: Mr. Michael E. Hayes
> JPMorgan Chase Bank, N. A.
> 120 S. LaSalle Street, 6[th] Floor
> Chicago, IL 60690
> (Fax) 312-661-5906
>
> Chad H. Gettleman, Esq.
> Adelman & Gettleman, Ltd.
> 53 W. Jackson Blvd., Suite 1050
> Chicago, IL 60604
> (Fax) 312-435-1059

18. Except as expressly set forth herein: (a) the Bank Loan Documents shall remain in full force and effect in accordance with their respective terms; and (b) nothing contained in this Final Order shall: (i) modify or alter any of the terms or provisions in the Bank Loan Documents in any manner whatsoever; (ii) cure, waive, release or postpone any defaults now or hereafter existing under

the Bank Loan Documents; (iii) establish a custom between any of the parties hereto; or (iv) in any way waive, limit, or condition the rights or remedies of the Bank under the Bank Loan Documents.

19. Nothing herein contained should prejudice, impair or otherwise affect the rights of the Bank or any other party in interest to seek: (i) relief from the automatic stay under Code §362(d), (ii) relief in the event the Trustee has heretofore used or hereafter uses the Cash Collateral contrary to the provisions of this Order, (iii) dismissal or conversion of the Bankruptcy Cases under Section 1112 of the Code, or (iv) any other appropriate relief.

20. If any or all of the Bankruptcy Cases are dismissed, converted or otherwise superseded, neither such action nor the entry of this Final Order shall affect the rights and remedies of the Bank under the Bank Loan Documents, all of which rights and remedies shall remain in full force and effect in accordance with applicable law and are hereby expressly preserved. Furthermore, the right of the Trustee to use the Cash Collateral shall immediately cease upon the entry of an order dismissing or converting any or all of the Bankruptcy Cases.

21. The Trustee's right to use Cash Collateral under the authority of this Final Order shall terminate at 12:00 midnight (Central time) on January 31, 2006, unless extended by subsequent order of this Court and/or upon the agreement of the Trustee and the Bank. A status hearing to consider the Trustee's continued use of Cash Collateral, subject to the Bank's continued agreement, is set for January 24, 2006, at 10:30 a.m. (the "**Hearing**"). No further notice of the Hearing is required.

ENTER:

_____
U. S. BANKRUPTCY JUDGE

11/15/05

69485.1 11/14/05                    13

c:\My Documents

*This Order prepared by:*
CHAD H. GETTLEMAN, ESQ. (ARDC #944858)
NATHAN Q. RUGG, ESQ. (ARDC# 6272969)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Boulevard, Suite 1050
Chicago, IL 60604
312/435-1050

Attorneys for JPMorgan Chase Bank, N. A.

AGREED TO:

JPMORGAN CHASE BANK, N. A.

By: *[signature]*

One of Its Attorneys

Chad H. Gettleman, Esq. (ARDC #944858)
Adelman & Gettleman, Ltd.
53 West Jackson Blvd., Suite 1050
Chicago, IL 60604
(312) 435-1050

NORMAN B. NEWMAN, TRUSTEE

By: *[signature]*

One of His Attorneys

Norman B. Newman, Esq. (ARDC #02045427)
Scott N. Schreiber, Esq. (ARDC # 6191042)
Much Shelist Freed Denenberg Ament &
Rubenstein, P.C.
191 N. Wacker Drive, Suite 1800
Chicago, IL 60606
(312)-521-2000

## ESTIMATED 3 MONTH BUDGET

**Income**

| | |
|---|---|
| Turnover from Assignee | $150,000.00 |
| Assignee Collection | |
|     (est) November | $ 25,000.00 |
|     (est) December | $ 20,000.00 |
|     (est) January | $ 15,000.00 |
| D. Nauer collection | $125,000.00 |

$335,000.00

**Expenses**

| | |
|---|---|
| Much Shelist Freed (to date) | $ 50,000.00 |
| High Ridge (to date) | $ 15,000.00 |
| Much Shelist Freed legal (est) | $100,000.00 |
| High Ridge (est) | $ 10,000.00 |
| Miller Cooper (est) | $ 30,000.00 |
| Trustee[1] | $       -0- |
| U.S. Trustee Quarterly Fees | $   3,000.00 |
| D. Nauer fee | $  18,750.00 |

$226,750.00

---

[1] Norm is deferring his Trustee fee until later in the case.