**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | Judge Carol A. Doyle |
| VERIDIANHEALTH, LLC, et al., | ) | Case No. 05 B 31483 |
| | ) | |
| Debtors. | ) | |

**NOTICE OF MOTION**

TO:  SEE ATTACHED SERVICE LIST

     **PLEASE TAKE NOTICE** that on **Thursday, February 19, 2009**, at the hour of **10:00 a.m.** or as soon thereafter as counsel may be heard, I shall appear before the Honorable Carol A. Doyle Bankruptcy Judge, in **Courtroom 742**, in the Dirksen Federal Building, 219 South Dearborn Street, Chicago, Illinois, or before any other Bankruptcy Judge who may be sitting in her stead and shall then and there present the **Trustee's Motion for Authorization to Pay Final Chapter 11 Compensation to Trustee's Counsel** and shall move the Court for entry of an Order in accordance therewith.

**AT WHICH TIME AND PLACE YOU MAY APPEAR IF YOU SO SEE FIT**

                                                   /s/ Norman B. Newman
                                                   NORMAN B. NEWMAN, not individually but solely as the Chapter 7 Trustee for VeridianHealth, LLC and its affiliated Debtors

Norman B. Newman, ARDC No. 02045427
Colleen E. McManus, ARDC No. 06243473
MUCH SHELIST DENENBERG AMENT & RUBENSTEIN, P.C.
191 North Wacker Drive, Suite 1800
Chicago, Illinois 60606
Telephone:  312.521.2000
Facsimile:  312.521.2100

**CERTIFICATE OF SERVICE**

     Norman B. Newman, an attorney, states that he caused a copy of the attached Motion to be served on all parties listed on the service list by depositing same in the U.S. Mail with sufficient first-class postage attached from 191 N. Wacker Drive, Suite 1800, Chicago, Illinois on February 3, 2008.

                                                   /s/ Norman B. Newman

**SERVICE LIST**

Gretchen Silver
Office of the U.S. Trustee
219 S. Dearborn Street
Room 873
Chicago, Illinois 60604

Alan Wolf
Robbins Salomon & Patt, Ltd.
25 E. Washington Street, Suite 1000
Chicago, Illinois 60602

Matthew Gensburg
Greenberg Traurig, LLP
77 W. Wacker Drive, Suite 2500
Chicago, Illinois 60601

Michael Eber
High Ridge Partners, Inc.
140 S. Dearborn Street, Suite 420
Chicago, Illinois 60603

Steven Towbin
Janice Alwin
Shaw Gussis Fishman Glantz
Wolfson & Towbin, LLC
321 N. Clark Street, Suite 800
Chicago, Illinois 60610

Dan Kelly, Controller Fleet Services
Enterprise Leasing Company of Chicago
1050 N. Lombard Road
Lombard, Illinois 60148

Michael Duffy
Drinker Biddle Gardner Carton
191 N. Wacker Drive
Suite 3700
Chicago, Illinois 60606

Royal Martin
Martin, Brown & Sullivan, Ltd.
321 S. Plymouth Court, 10th Floor
Chicago, Illinois 60604

Tracy L. Netzel
Law Office of Tracy L. Netzel
103 W. College Avenue
Suite 306
Appelton, WI 54911

Patrick Maxcy
Sonnenschein Nath & Rosenthal, LLP
8000 Sears Tower
233 S. Wacker Drive
Chicago, Illinois 60606

Chad Gettleman
Adelman & Gettleman
53 W. Jackson Blvd.
Suite 1050
Chicago, Illinois 60604

Marc Fenton
Deborah Gutfeld
DLA Piper US LLP
203 N. LaSalle Street, Suite 1900
Chicago, Illinois 60601

David Leibowitz
Leibowitz Law Center
420 W. Clayton Street
Waukegan, Illinois 60085

Michael Gesas
Arnstein & Lehr
120 S. Riverside Plaza
Suite 1200
Chicago, IL 60606

Charles Chejfec
Katten Muchin Rosenman, LLP
525 W. Monroe Street
Suite 1600
Chicago, Illinois 60661

Doug Hewitt
Neal Gerber & Eisenberg, LLP
Two N. LaSalle Street, Suite 2200
Chicago, IL 60602

Janet Doyle
Illinois Attorney General's Office
100 W. Randolph Street, 11th Floor
Chicago, IL 60601

Michael Traison
Miller Canfield Paddock & Stone, P.L.C.
Amata Office Suites
225 W. Washington Street, Suite 2000
Chicago, IL 60606

Scott N. Schreiber
Stahl Cowen Crowley Addis, LLC
55 W. Monroe Street, Suite 1200
Chicago, IL 60603

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | **Chapter 7** |
| **VERIDIANHEALTH, LLC, et al.**[1] | ) | **Judge Carol A. Doyle** |
| | ) | **Case No. 05 B 31483** |
| Debtors. | ) | **Hearing Date: Thursday, 2/19/09** |
| | ) | **Hearing Time: 10:00 a.m.** |

**TRUSTEE'S MOTION FOR AUTHORIZATION TO PAY FINAL
<u>CHAPTER 11 COMPENSATION TO TRUSTEE'S COUNSEL</u>**

Norman B. Newman, not individually, but solely as the Chapter 7 Trustee herein (the "Trustee"), moves this Court, pursuant to § 330 of the Bankruptcy Code and Bankruptcy Rule 2016, for the entry of an Order authorizing the Trustee to pay final Chapter 11 compensation to Much Shelist Denenberg Ament & Rubenstein, P.C. ("Much Shelist"), the Trustee's counsel. In support of his motion, the Trustee states as follows:

1. On August 10, 2005, Involuntary Petitions under Chapter 11 of the U.S. Bankruptcy Code were filed against VeridianHealth, LLC and certain of its affiliated entities ("collectively the Debtors").

2. On August 25, 2005, this Court entered Orders for relief against the Debtors under Chapter 11 and authorized the appointment of a Chapter 11 Trustee.

3. On August 31, 2005, the Court entered an Order approving appointment of the Trustee as Chapter 11 Trustee.

4. On August 21, 2007, the Debtor's Chapter 11 cases were converted to Chapter 7 cases. The Trustee was subsequently appointed and qualified as the Chapter 7 Trustee.

5. On September 21, 2005, this Court entered an Order authorizing the

---

[1] The Debtors are the following entities: Veridian Health, LLC, MISU Midwest, LLC, Universal Enterprises Midwest, LLC, and Factor, LLC.

Trustee to employ Much Shelist, as his attorneys.

6. On December 6, 2005, this Court entered an Order establishing payment procedures for the Chapter 11 Trustee's counsel and for other professionals, providing, among other things, for the Chapter 11 Trustee's professionals to be paid 90% of all fees requested on a monthly basis plus 100% of expenses.

7. Attached hereto as Group Exhibit A are copies of Much Shelist's statements of services rendered from the period August 29, 2005 through August 7, 2007. These statements of services were previously filed with the Court and served on the parties in interest in this case in conjunction with the fourteen (14) monthly fee statements filed by Much Shelist during the course of the Chapter 11 case. The statements of services are provided chronologically and are separated by activity. Certain time entries could have been listed under a different activity, but there is no duplication of time entries.

8. Much Shelist provided 750.50 hours of services to the Chapter 11 Trustee. The value of the legal services provided by Much Shelist to the Chapter 11 Trustee is $289,539.70. Much Shelist has received payment on account of its fees in the amount of $265,542.26. The balance requested to be paid by Much Shelist is $23,997.44.

9. As more fully set forth in Group Exhibit "A", attached hereto, Much Shelist provided legal services to the Chapter 11 Trustee with respect to the following matters:

A. **General Administration (Tab No. 1):** Much Shelist provided 305.90 hours of general administrative services to the Trustee. Prior to the filing of the involuntary Chapter 11 cases, the Debtors executed Trust Agreements and Assignments

2

for the Benefit of their Creditors (the "Assignments") to Michael Eber (the "Assignee") of High Ridge Partners.  At the time of the execution of the Assignments, the Debtors were parties to litigation pending in the Circuit Court of Cook County, Illinois, Chancery Division, initiated by the People of State of Illinois, by and through the Illinois Attorney General and the Relator, Scott Schichtl (the "State Court Litigation") to recover damages and civil penalties rising from an alleged scheme to defraud patients and insurance companies through the performance of allegedly worthless and medically unnecessary electro-diagnostic testing services on patients in Illinois and across the country.

Much Shelist was involved in meetings and telephonic communications with representatives and counsel for JP Morgan Chase Bank, the Debtors' secured creditor, the Assignee and employees of High Ridge Partners and the Assignee's counsel with respect to the Assignee's pre-petition activities as well as counsel representing the Illinois Attorney General in connection with the pending State Court Litigation.

Counsel was also involved in numerous meetings and telephone conversations with Debtors' pre-petition corporate counsel and litigation counsel in connection with obtaining corporate documents, copies of pleadings, information for the preparation of schedules and statements of financial affairs as well as to assist the Trustee in gaining an understanding of Debtors' business activities, corporate structure and relationships with numerous related medical corporations.

According to the Debtors' books and records, the Debtors were owed in excess of $50,000,000.00 for unpaid diagnostic testing services.  Much Shelist attorneys met with the Debtors' former in-house collection attorney along with Trustee's accountants to review the Debtors' books and records as well as to gain an understanding as to the extent

3

and nature of the outstanding accounts receivable. Significant time was also expended reviewing Debtors' books and records at a record storage facility in Deerfield/Northbrook, Illinois. In light of the allegations raised as to the propriety of the accounts receivable associated with the diagnostic testing services, the Trustee engaged in written correspondence, meetings and telephonic communications with medical experts as well as individuals and entities involved in the collection of medical diagnostic testing receivables.

The Debtor's former principal, Mitchell Rubin, was adjudicated a bankrupt under Chapter 7 of the Bankruptcy Code. Much Shelist was involved in meetings, correspondence and telephonic communications with Phillip Martino, the Chapter 7 Trustee in Mr. Rubin's case, as well as Mr. Martino's counsel in conjunction with sharing and obtaining information, claims against the Debtors' Directors and Officers insurance policy carrier and matters related to the Trustee's efforts to collect accounts receivable. Time was also expended reviewing claims asserted by Mr. Rubin's spouse, Suzanne Rubin.

The foregoing is a general summary of the nature of the General Administrative services rendered. The time entries listed under Tab No. 1 provide more specific information. The value of general administrative services rendered by Much Shelist is $111,647.80.

    **B.**    <u>**Disposition of Assets (Tab No. 2)**</u>**:** Much Shelist expended 165.30 hours assisting the Trustee with the disposition of the assets of the Debtors' estates. The Debtors operated their businesses out of leased premises in Deerfield, Illinois There was a significant amount of office equipment and furniture on the premises. First Midwest

4

Bank claimed a security interest in the office equipment and furniture. The Assignee had been involved in discussions, pre-petition, with Great American Group to conduct an auction sale of the furniture and office equipment at the business premises. The Trustee was involved in telephonic and written communications with the Assignee, counsel for First Midwest Bank and counsel for the Lessor with respect to the sale and the Trustee's rights in and to the office furniture and equipment. It turned out that the Debtors either had no ownership interest in the office furniture and equipment or if they did, there was no equity.

The majority of time expended by Much Shelist in connection with this activity involves the collection of the Debtors' accounts receivable. As previously stated, Debtors' books and records reflected in excess of $50,000,000.00 in accounts receivable. On information and belief, prior to entering into the Assignments, the Debtors transmitted final billing statements to receivable obligors, including insurance carriers, to recover amounts owing for diagnostic medical tests. The People of the State of Illinois, through the Illinois Attorney General, obtained a temporary restraining order preventing the Debtors from initiating any further collection activity with respect to diagnostic testing services. In meetings with counsel for the Illinois Attorney General, acting on behalf of the People of the State of Illinois, the Trustee and Much Shelist received an explanation of the issues raised in the State Court Litigation and came to an understanding with the Illinois Attorney General with respect to the parameters of the Trustee's accounts receivable collection efforts. The Trustee was able to retain the proceeds which were remitted in response to those invoices transmitted by the Debtors prior to executing their Assignments. The Trustee was also able to retain and continue to pursue collection of

those receivables which were already the subject of pending personal injury and workers' compensation claims.

The Trustee determined that it was in the best interest of the creditors of this estate to solicit proposals from entities experienced in the collection of medical testing receivables. Counsel was involved in numerous meetings and telephonic and written communications with the Trustee's accountants as well as representatives from numerous entities involved in the collection of medical testing receivables. Counsel was also involved in discussions with representatives and counsel representing JP Morgan Chase Bank with respect to negotiating appropriate contingency fees for the handling of receivable collections. The Trustee initially negotiated an agreement with Accelerated Receivables Management ("ARM") to serve as the Trustee's collection agent. However, prior to the ruling on the Trustee's motion to enter into an agreement with ARM, the Trustee, with the assistance of counsel, received and negotiated a more financially advantageous proposal from Hilco Medical and Incipient. Thereafter, the Court authorized the Trustee to employ Hilco Medical/Incipient as his collection agent.

Counsel was also involved in telephonic and written communications with the Trustee's medical consultant with respect to developing parameters and guidelines for the collection of the medical testing receivables. Counsel was also involved in numerous meetings, telephone conferences and written correspondence with Trustee's collection agent with respect to generating revised billings in accordance with the recommendations of the Trustee's medical consultant. Counsel was also involved in meetings, telephonic and written communications with counsel representing State Farm Insurance Company and United Health Care with respect to pre-petition billings.

6

The value of the services rendered by Much Shelist in connection with the disposition of assets is $69,454.20. The foregoing is a summary of the services rendered under this activity. The chronological statement of services found under Tab No. 2 provides more specific details.

    **C.**   **Retention of Professionals (Tab No. 3):** Much Shelist expended 68.00 hours in connection with the Trustee's employment of professionals. Counsel prepared appropriate pleadings and appeared in Court on the Trustee's motions to employ Much Shelist, Diane Nauer as special counsel, Michael Eber and High Ridge Partners as the Trustee's consultant to assist in preparing schedules and statement of financial affairs and Miller Cooper and Co. as Trustee's accountants.

Time was also expended negotiating agreements and preparing pleadings in connection with the Trustee's motion to employ ARM and thereafter Hilco Medical/Incipient as collection agent; Dr. Wayne Rubinstein as Trustee's medical consultant and to employ Scott Schreiber as the Trustee's special counsel subsequent to his departure from Much Shelist.

Time was also expended in connection with discussions relative to the employment of Brown & Joseph as replacement collection agent for Hilco Medical/Incipient.

The time value of the services rendered in connection with the Trustee's retention of professionals is $25,524.50.

    **D.**   **Secured Creditors Matters (Tab No. 4):** Much Shelist expended 52.50 hours assisting the Trustee in dealing with the claims of Debtors' secured creditors. Much Shelist attorneys reviewed documents and lien searches to ascertain the extent and

7

validity of secured claims against the Debtors' assets. As previously stated, First Midwest Bank had a security interest in all furniture and office equipment located at the Debtor's former business premises in Deerfield, Illinois. The majority of the time expended in connection with this matter relates to the secured claim of JP Morgan Chase Bank (the "Bank"). The Bank held a blanket security interest in all of the Debtors' assets. Much Shelist counsel reviewed the Bank's documents and engaged in telephonic and written communications and meetings with Bank representatives and the Bank's counsel in connection with the negotiation and preparation of a Cash Collateral Order.

The Bank agreed to allow the Trustee to use its cash collateral for purposes of employing necessary professionals to enable the Trustee to liquidate the Debtors' assets, including collecting accounts receivable. Counsel also assisted the Trustee in preparing proposed budgets which were presented to the Bank during the course of the Chapter 11 case.

In mid-September of 2005, this Court entered a Cash Collateral Order. Thereafter, counsel was engaged in continuous negotiations, preparation of pleadings and appearances in Court on the permanent use of cash collateral. This Court ultimately entered 12 extensions of the Cash Collateral Order.

The value of the services rendered by Much Shelist in connection with the Trustee's dealings with secured creditors is $20,272.30.

**E.** **Claim Administration (Tab No. 5):** Much Shelist expended 7.60 hours dealing with creditor claims asserted against the Debtors as well as Debtors' claims which were being prosecuted by Diane Nauer, the Trustee's special counsel. Counsel dealt with claims asserted by Debtors' former lessor for unpaid rent and a representative

8

of US Bank with respect to a claim for leased ultrasound equipment. Counsel reviewed proofs of claim filed by the Bank, State Farm Fire and Casualty Company, State Farm Mutual Auto and engaged in discussions with counsel for United Health Group with respect to claim issues.

The value of the services rendered by Much Shelist's attorneys in connection with claims administration is $3,123.30.

**F.     Fee Related Matters (Tab No. 6):** Much Shelist expended 39.10 hours dealing with fee related matters. As previously mentioned, this Court entered an Order establishing payment procedures for the Trustee's counsel and other professionals. Counsel prepared pleadings and appeared in Court on a motion to establish payment procedures; counsel prepared pleadings and appeared in Court on a motion to pay compensation to Diane Nauer, the Trustee's special counsel. Counsel reviewed statements of services rendered by Much Shelist, as well as statement of services rendered by the Trustee's accountants and prepared and filed 14 monthly statements of services for Much Shelist and eight statements of services of Miller Cooper and Co., the Trustee's accountants. Counsel also prepared, filed and appeared in Court on a motion to compensate Michael Eber and High Ridge Partners for consulting services provided to the Trustee. Counsel also prepared pleadings and appeared in Court on the Trustee's motion to pay compensation to the Trustee's medical consultant and reviewed objections filed in connection therewith.

The value of the services provided by Much Shelist in connection with fee related maters is $15,639.00.

**G.     Mitch Rubin Bankruptcy (Tab No. 7):** Much Shelist attorneys

expended 59.20 hours providing services to the Trustee in connection with the Chapter 7 case involving the Debtors' former principal, Mitch Rubin. Mr. Rubin was adjudicated a bankrupt under Chapter 7 of the Bankruptcy Code in connection with an involuntary Chapter 7 case filed against him on October 17, 2005. Much Shelist attorneys communicated with representatives and counsel for the Bank with respect to the prosecution of the involuntary case as well as the nature of the Debtors' claims against Mr. Rubin. Much Shelist counsel was also involved in telephonic communications, written correspondence and meetings with attorneys representing Mr. Rubin relative to his involvement with the Debtors and the allegations regarding his participation in allegedly improper medical testing billings. Counsel also communicated on a regular basis with Phillip Martino, Mr. Rubin's Chapter 7 Trustee, and his counsel with respect to a common interest agreement and mutual sharing of documents and other information relative to the assets and liabilities of Mr. Rubin and the Debtors.

Much Shelist prepared and filed a proof of claim on the Trustee's behalf in Mr. Rubin's Chapter 7 case and also reviewed pleadings, and appeared in Court in connection with claims asserted by Suzanne Rubin, Mr. Rubin's spouse, against Mr. Rubin's bankruptcy estate. Time was also expended reviewing adversary complaints objecting to Mr. Rubin's discharge and dischargeability of certain debts. Much Shelist counsel also participated with Mr. Rubin's Trustee in connection with a settlement reached with Mid-American Insurance Group relative to claims made against Directors and Officer's insurance policies.

The value of the services rendered by Much Shelist in connection with the Mitch Rubin's Chapter 7 bankruptcy case is $24,023.70.

10

**H.    Executory Contracts and Leases (Tab No. 8):**    Much Shelist expended 21.70 hours dealing with executory contracts and leases. The services rendered primarily involved the Debtors' lease of their business premises in Deerfield, Illinois. Counsel reviewed documents, engaged in telephonic and written correspondences with lessor's attorney, counsel for the Bank and the Assignee with respect to the landlord's right of possession of the premises. Counsel was also involved in reviewing pleadings and appearing in Court in connection with the landlord's motion for stay relief and the ultimate negotiation of an Agreed Order granting the landlord's motion. Counsel reviewed leases of personal property and equipment in which the Debtors either had no interest or equity.

The time value of the services in connection with this matter is $8,166.50.

**I.    Dealing with Creditors (Tab No. 9):**  Much Shelist expended 24.90 hours dealing with claims of creditors. The majority of the services rendered related to requests for documents the Trustee received from State Farm in connection with adversary proceedings initiated by State Farm against Mitch Rubin. The Trustee believed that State Farm's request for documentation and information was overbroad and required the Trustee to provide confidential information pertaining to the Trustee's activities and dealings with his professionals. The Court ultimately required the Trustee to provide State Farm with most of the information it requested.

Counsel was involved in reviewing pleadings, correspondence and engaging in telephonic and written communications with counsel for the Bank and counsel for State Farm in connection with the information requested. Time was also expended in the drafting and negotiation of a confidentiality agreement as well as a protective order. The

11

time value of the services rendered by Much Shelist with respect to this matter is $10,285.70.

  **J.**  **State Court (Tab No. 10):** Much Shelist expended 28.00 hours representing the Trustee's interest in connection with the action against the Debtors, Mitchell Rubin and related entities in the State Court Litigation. As previously stated, at the time of the entry of the orders for relief against the Debtors in these cases, the State Court Litigation was pending against the Debtors, Mr. Rubin and numerous affiliated entities in connection with the alleged improper billing practices engaged in by the Debtors and related entities. The Trustee was concerned that the State Court Litigation was proceeding against the Debtors in violation of the automatic stay. The Trustee was also concerned about what impact the preliminary injunction order entered in the State Court Litigation had on the Trustee's ability to liquidate the Debtors' assets, including collecting accounts receivable. Much Shelist reviewed pleadings, communicated with counsel for the Attorney General, the Debtor's attorney and other attorneys representing for parties in interest in the State Court Litigation to understand the allegations of wrongdoing against the Defendants and the extent and validity of the Debtors' accounts receivable. Much Shelist attended depositions of former counsel and employees of the Debtors and reviewed pleadings filed by affiliated entities.

  The time value of the services rendered by Much Shelist in connection with the State Court Litigation is $9,569.20.

  10.  The services rendered by Much Shelist provided a substantial benefit to the Chapter 11 Trustee and the Chapter 11 estate. As a result of Much Shelist's efforts, the Chapter 11 Trustee collected in excess of $1,000,000.00 in connection with the

liquidation of the Debtors' assets.

11. Fifteen day notice of the hearing on this Motion has been provided to the parties on the service list in this case. The parties on the service list represent more than 90% of the Debtors' total indebtedness, including J.P. Morgan Chase Bank, which has a lien on all of the Debtors' assets.

**WHEREFORE**, the Trustee respectfully requests that this Court enter an Order as follows:

a. Awarding Much Shelist final compensation for legal services rendered to the Chapter 11 Trustee in the amount of $289,539.70;

b. Authorizing Much Shelist to apply payments previously received in the amount of $265,542.26 against the final compensation award;

c. Authorizing the Trustee to pay the balance owing in the amount of $23,997.44 as an allowed Chapter 11 expense of the administration of these Estates;

d. Approving the Shortened, Limited Notice of the Hearing on this Motion heretofore provided; and

e. For such other and further relief as this Court deems appropriate under the circumstances.

        Respectfully submitted,

        NORMAN B. NEWMAN, not individually but solely as the Chapter 7 Trustee for VeridianHealth, LLC and its affiliated Debtors.

        By: /s/ Norman B. Newman

Norman B. Newman (Atty. ID# 02045427)
**Much Shelist Denenberg Ament & Rubenstein, P.C.**
191 N. Wacker Drive, Suite 1800
Chicago, IL 60606
Telephone:  312-521-2000
Facsimile:   312-521-2100

13